No. 15-1639

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### HO KEUNG TSE,

*Plaintiff-Appellant,*

**v.**

### APPLE INC., MUSICMATCH, INC., and
### SONY NETWORK ENTERTAINMENT INT'L LLC,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of California in
No. 4:06-CV-06573, Judge Saundra Brown Armstrong

### BRIEF FOR DEFENDANTS-APPELLEES

MICHELLE CARNIAUX
JOHN FLOCK
KENYON & KENYON LLP
One Broadway
New York, NY  10004
Telephone:  (212) 425-7200
Facsimile:  (212) 425-5288
Mcarniaux@kenyon.com
Jflock@kenyon.com

Attorneys for Defendant-Appellee
*Sony Network Entertainment Int'l LLC*

MICHAEL A. JACOBS
RICHARD S.J. HUNG
ESTHER KIM
MORRISON & FOERSTER LLP
425 Market Street
SAN FRANCISCO, CA  94105
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522
MJacobs@mofo.com
RHung@mofo.com
EKim@mofo.com

Attorneys for Defendant-Appellee
*Apple Inc.*

*(Additional counsel listed on inside cover)*

DOUGLAS E. LUMISH
PATRICIA YOUNG
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
Telephone:  (650) 328-4600
Facsimile:  (650) 463-2600
doug.lumish@lw.com
patricia.young@lw.com

Attorneys for Defendant-Appellee
*MusicMatch, Inc.*

BRIAN R. MATSUI
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
WASHINGTON, DC  20006
Telephone:  (202) 887-8784
Facsimile:  (202) 785-7569
BMatsui@mofo.com

Attorney for Defendant-Appellee
*Apple Inc.*

## CERTIFICATE OF INTEREST (APPLE)

Counsel for Defendant-Appellee Apple Inc. certifies the following:

1.      The full name of every party or amicus represented by me is:

Apple Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Apple Inc.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are as follows:

None

4.      The name of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

MORRISON & FOERSTER LLP:  Harold J. McElhinny, Michael A. Jacobs, Richard S.J. Hung, George B. Busey, Brian R. Matsui, Francis C. Ho,* and Esther Kim

WHYTE HIRSCHOEBECK DUDEK S.C.:  Eugenia G. Carter


Dated: August 10, 2015                  _____*/s/ Michael A. Jacobs*_____
                                                         Michael A. Jacobs


* No longer with the firm.

## <u>CERTIFICATE OF INTEREST (MUSICMATCH)</u>

Counsel for Defendant-Appellee MusicMatch, Inc. certifies the following:

1.     The full name of every party or amicus represented by me is:

MusicMatch, Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Yahoo! Inc.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are as follows:

Yahoo! Inc. was the parent corporation and sole owner of MusicMatch, Inc., which merged into Yahoo! Inc. and no longer exists as a legal entity.  Yahoo! Inc. has no parent corporation, and no publicly held entity owns 10 percent or more of Yahoo! Inc.'s stock.

4.     The name of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

LATHAN & WATKINS LLP:  Douglas E. Lumish and Patricia Young

WEIL, GOTSHAL & MANGES LLP:  Yar R. Chaikovsky, Nicholas P. Groombridge, David J. Ball, and Barbara Vining

ZUCKERMAN SPAEDER LLP:  Herbert Better

Dated: August 10, 2015                    */s/ Douglas E. Lumish*
                                        Douglas E. Lumish

## **CERTIFICATE OF INTEREST (SONY)**

Counsel for Defendant-Appellee Sony Network Entertainment Int'l LLC

certifies the following:

1.    The full name of every party or amicus represented by me is:

Sony Network Entertainment International LLC

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Sony Network Entertainment International LLC

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus represented by me are:

Sony Network Entertainment International LLC is a wholly owned subsidiary of Sony Corporation of America, which is a subsidiary of publicly traded Sony Corporation of Japan.

4.    The name of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

KENYON & KENYON LLP:  John Flock, Michelle Carniaux, Frank Bernstein, Richard S. Gresalfi (deceased), and Megan Olesek

FEDDER AND GARTEN PA:  Ira L. Oring and Timothy Manuelides


Dated: August 10, 2015                  */s/ Michelle Carniaux*
                                         Michelle Carniaux

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTEREST (APPLE).................................................................i

CERTIFICATE OF INTEREST (MUSICMATCH).......................................ii

CERTIFICATE OF INTEREST (SONY) ............................................... iii

TABLE OF AUTHORITIES ...................................................vi

TABLE OF ABBREVIATIONS ........................................... viii

STATEMENT OF RELATED CASES ...................................................1

INTRODUCTION ................................................................1

STATEMENT OF THE ISSUES ...............................................2

STATEMENT OF THE CASE.................................................3

I.    THE DISTRICT COURT PROCEEDINGS ......................................3

    A.    The Case Was Stayed Pending Reexamination of the '797 Patent.................................................................3

    B.    The '797 Patent Was Invalidated in the *Google* Litigation .................4

    C.    The District Court Holds That Tse Is Barred by Collateral Estoppel...............................................5

    D.    Tse's Vexatious Approach to Litigating the Case ...............................6

II.   THE ASSERTED PATENT.................................................8

    A.    The Technology of the '797 Patent.......................................8

    B.    The Prosecution History.................................................9

SUMMARY OF THE ARGUMENT ...............................................10

ARGUMENT....................................................................12

I.    STANDARD OF REVIEW.................................................12

II.    THE DISTRICT COURT CORRECTLY FOUND THAT THE
       DOCTRINE OF COLLATERAL ESTOPPEL BARS TSE FROM
       ASSERTING HIS INVALID PATENT AGAINST DEFENDANTS..........12

       A.    The '797 Patent Was Found Invalid in the *Google* Litigation
             and Proceeded Through Final Judgment, and Tse Was Afforded
             All Procedural Opportunities ...............................................13

       B.    The Issues Litigated in the *Google* Litigation Were Identical to
             the Issues in the District Court...........................................15

       C.    Tse Had a Full and Fair Opportunity to Litigate.................15

III.   THE DISTRICT COURT DID NOT ERR BY LIMITING THE
       BRIEFING ON COLLATERAL ESTOPPEL, ESPECIALLY
       BECAUSE TSE DID NOT SEEK ADDITIONAL PAGES........................17

IV.    THE *GOOGLE* COURT CORRECTLY DECIDED CLAIMS 1-5, 13,
       16, 17, 20, AND 23-26 OF THE '797 PATENT ARE INVALID FOR
       LACK OF WRITTEN DESCRIPTION .......................................18

       A.    Claims Containing the No-Charge Limitation Lack Written
             Description Support in the Parent Application ...................19

       B.    The Continuation-in-Part Application Also Fails to Provide
             Sufficient Written Description Support .............................20

       C.    The Original CIP Claims Do Not Disclose The No-Charge
             Limitation .........................................................................21

CONCLUSION...................................................................................23

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Abbott Labs. v. Andrx Pharm., Inc.*,
    473 F.3d 1196 (Fed. Cir. 2007) .........................................................................13

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
    435 F.3d 1356 (Fed. Cir. 2006) .........................................................................12

*Bayer AG. v. Biovail Corp.*,
    279 F.3d 1340 (Fed. Cir. 2002) .........................................................................12

*Blonder-Tongue Laboratories, Inc. v. University of Illinois
    Foundation*,
    402 U.S. 313, 339-40 (1969) .....................................................................*passim*

*Collins v. D.R. Horton, Inc.*,
    505 F.3d 874 (9th Cir. 2007) .............................................................................14

*In re Ho Keung Tse*,
    No. 13-168, 552 F. App'x 979 (Fed. Cir. 2014).................................................1

*Israel Bio-Engineering Project v. Amgen, Inc.*,
    475 F.3d 1256 (Fed. Cir. 2007) .........................................................................18

*Lockwood v. Am. Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997) .........................................................................21

*Luben Indus., Inc. v. United States*,
    707 F.2d 1037 (9th Cir. 1983) ...........................................................................13

*Miss. Chem. Corp. v. Swift Agric. Chems. Corp.*,
    717 F.2d 1374 (Fed. Cir. 1983) .........................................................................15

*Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*,
    170 F.3d 1373 (Fed. Cir. 1999) ...................................................................16, 17

*Stevenson v. Sears, Roebuck & Co.*,
    713 F.2d 705 (Fed. Cir. 1983) .....................................................................14, 15

vi

*Tse v. Google, Inc.*,
   No. 14-1222 .........................................................................*passim*

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen.*
   *Elec. Co.*,
   264 F.3d 1111 (Fed. Cir. 2001) ........................................................19

*United States v. Oregon*,
   745 F.2d 550 (9th Cir. 1984) ............................................................17

**STATUTES**

35 U.S.C.
   § 112 ................................................................................................18
   § 112(a) ...........................................................................................12

# TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| '276 application | Application No. 09/112,276 |
| '448 application | Application No. 08/587,448 |
| '797 patent | U.S. Patent No. 6,665,797 |
| AC sub-program | Sub-program in U.S. Patent No. 6,665,797 for authenticating a computer |
| AS sub-program | Sub-program in U.S. Patent No. 6,665,797 for authorizing access or use of protected software |
| Apple | Apple Inc. |
| CIP application | Application No. 09/112,276 |
| Defendants | Defendants-Appellees Apple Inc., MusicMatch, Inc., and Sony Network Entertainment International LLC |
| EI sub-program | Sub-program in U.S. Patent No. 6,665,797 for providing encrypted identity information |
| *Google* litigation | *Tse v. Google, Inc.*, Case No. 3:13-cv-194-SI (N.D. Cal) |
| MusicMatch | MusicMatch, Inc. |
| no-charge limitation | Limitation requiring providing access to or permitting use of protected software without performing an electronic commerce operation or payment |
| parent application | Application No. 08/587,448 |
| Patent Office | U.S. Patent and Trademark Office |
| Sony | Sony Network Entertainment International LLC |
| Tse | Ho Keung Tse |

**STATEMENT OF RELATED CASES**

Appellant Ho Keung Tse ("Tse") was previously denied mandamus by this Court in this case in a petition captioned *In re Ho Keung Tse*, No. 13-168. The decision was dated January 31, 2014, and the panel consisted of Circuit Judges O'Malley, Linn, and Wallach. *In re Ho Keung Tse*, 552 F. App'x 979, 980 (Fed. Cir. 2014).

Defendants are aware of no other pending cases that would directly affect or be affected by this Court's decision in the pending appeal.

**INTRODUCTION**

Tse has had his day in court and lost. In *Tse v. Google, Inc.*, No. 14-1222, this Court previously issued a Rule 36 judgment affirming the district court's determination that U.S. Patent No. 6,665,797 (the "'797 patent") lacks written description support. A521-22. Tse then petitioned for rehearing from this Court and for a writ of certiorari from the Supreme Court, but both petitions were denied. Tse has thus exhausted all appeals from that prior judgment of invalidity and that judgment is now final. Tse now should be collaterally estopped from asserting the '797 patent against Defendants – or anyone else.

Because the application of collateral estoppel applies so clearly to Tse's claims against Defendants, the district court in these proceedings correctly dismissed his case against Defendants. Nor did the district court abuse its

discretion by limiting the amount of briefing to address whether the doctrine of

collateral estoppel applied – particularly as Tse never moved for additional pages

and still has not shown how additional pages might have changed the outcome.

Having lost in this Court once before, Tse does not get a do-over to rehash his

invalidity arguments – and with different judges, as requested by Tse.  (Opening

Br. at viii.)  The district court should be affirmed.

## STATEMENT OF THE ISSUES

1.    Whether the district court correctly held that Tse is collaterally

estopped from asserting claims 1-5, 13, 16, 17, 20, and 23-26 of the '797 patent

against Defendants-Appellees Apple Inc. ("Apple"), MusicMatch, Inc.

("MusicMatch"), and Sony Network Entertainment International LLC ("Sony")

(collectively, "Defendants"), where those claims were previously held invalid in

the *Google* litigation.

2.    Whether the district court abused its discretion by allowing the parties

only five pages to brief the collateral estoppel issue.

3.    Should the Court hold that collateral estoppel does not apply, whether

the district court and this Court in the *Google* litigation correctly held that

claims 1-5, 13, 16, 17, 20, and 23-26 of the '797 patent are invalid for lack of

written description under 35 U.S.C. § 112.

## STATEMENT OF THE CASE

## I.    THE DISTRICT COURT PROCEEDINGS

On August 5, 2005, Tse filed a patent infringement action against

Defendants in the District of Maryland, alleging infringement of the '797 patent.

The case was transferred to the Northern District of California on

October 20, 2006.  A10.

### A.    The Case Was Stayed Pending Reexamination of the '797 Patent

On July 24, 2007, Defendants initiated an *ex parte* reexamination proceeding

of all asserted claims of the '797 patent.  A875-952.  Upon motion of the

Defendants, the district court stayed the case pending reexamination of the

'797 patent.  A972-79.

During reexamination, Tse amended his claims and added new claims.

A1200-1343; A1410.  The U.S. Patent and Trademark Office ("Patent Office")

issued a final Office Action on July 21, 2009, rejecting all claims except for

claim 16, which had been amended.  A785-810.  Tse appealed the rejection to the

Board of Patent Appeals.  A1410; A1760-96 at A1761.

On August 7, 2012, the Patent Office issued a Reexamination Certificate for

the '797 patent.  A752-55.  The Reexamination Certificate contained obvious

errors with respect to some of the asserted claims.  A1390-91; A1408-1540;

A1630.  Although the Patent Office subsequently corrected some of the errors in

the claims, asserted claim 23 remained uncorrected.  A1607-13; A1614-18.  On

that basis, the district court declined to lift the stay.  A1629-32.

### B.    The '797 Patent Was Invalidated in the *Google* Litigation

While the reexamination proceeding was pending, Tse filed two separate

lawsuits on May 30, 2012, in the Eastern District of Texas, alleging infringement

of claims in the '797 patent – the very same claims at issue in the instant action.[1]

A821-22.  The first suit was filed against Google, Inc., Samsung

Telecommunications America, LLC, and HTC America, Inc.  *Id.*  The second suit

was filed against Blockbuster, LLC.  *Id.*  In 2013, both cases were transferred to

the Northern District of California and were related for pre-trial purposes

(collectively, the "*Google* litigation").  *Id.*

On December 11, 2013, the district court in the *Google* litigation granted the

defendants' motion for summary judgment of invalidity.  The district court held

that an amendment added to all claims during prosecution rendered the '797 patent

invalid for lack of written description support.

Tse subsequently appealed the ruling to the Federal Circuit.  He submitted

extensive briefing (86 pages, in total) to support his appeal.  On July 16, 2014, the

Federal Circuit summarily affirmed the invalidity of the asserted claims of the

---

[1] On October 9, 2012, Tse served amended infringement contentions on Appellees, asserting claims 1-4, 13, 16, 17, 20, and 23-26 against all Appellees and additionally asserting claim 5 against Apple.  A504; A523-527; A1549-55.

4

'797 patent. A509.1-524. Tse then petitioned the Federal Circuit for panel rehearing and petition for rehearing *en banc*, but both were denied. A662.5-662.6. Tse also filed a petition for a writ of certiorari from the Supreme Court, which denied his petition. A662.8.

### C.    The District Court Holds That Tse Is Barred by Collateral Estoppel

After the Federal Circuit affirmed the *Google* court's grant of summary judgment of invalidity, the district court issued an order to show cause why this case should or should not be dismissed based on the *Google* litigation. A500. Tse submitted an initial brief, in which he stated his intent to petition this Court for panel rehearing and rehearing *en banc* in the *Google* litigation, A501-02, which he later supplemented with a second brief arguing the applicability of collateral estoppel, A654-55. Acknowledging Tse's right to petition for panel rehearing and rehearing *en banc*, the district court ordered the parties to submit another brief at the completion of the appeals process and gave the parties five pages to address why this case should or should not be dismissed. A656-57.

After exhausting all available appeals in the *Google* litigation, including to the Supreme Court, Tse submitted a brief pursuant to the district court's order. Rather than addressing the applicability of collateral estoppel as directed by the district court, Tse instead used most of his brief to attack the *Google* court's invalidity determination. A663-69. Notably, Tse did not move the district court

5

for additional pages to brief the collateral estoppel issue. *Id.* On April 14, 2015, after considering the parties' briefing, the district court dismissed the action with prejudice. A1-4. The district court concluded that Tse had had his day in court and that "a review of the record in [the *Google*] case reveals that Plaintiff had ample opportunity to litigate this [validity] issue in both the district court and on appeal." A4. The district court also noted that the *Google* court had "issued a reasoned and detailed order granting summary judgment in favor of the defendants." *Id.* The district court thus held that Tse was collaterally estopped from re-litigating the validity of the same claims from the '797 patent, in light of the invalidity judgment in the *Google* litigation. A3-4.

### D.    Tse's Vexatious Approach to Litigating the Case

Throughout the course of this litigation, Tse has not hesitated to fully litigate his case and to try to advance his case at every stage by filing repeated motions and appeals – no matter how specious. Although unsuccessful, they have forced Defendants to incur significant attorneys' fees to respond to them. Tse's present appeal is the latest of these efforts.

For example, on May 28, 2008, Tse sought sanctions against MusicMatch for allegedly failing to comply with a court discovery order. A30-63. In denying the motion, the district court observed that Tse had "made no showing of bad faith by MusicMatch, let alone a showing that would warrant sanctions pursuant to the

Court's inherent power" and had cited no legal authority for his sanctions request. A310-11. The district court also cautioned Tse to refrain from making inappropriate threats of police intervention or imprisonment, as he had done with MusicMatch's counsel. A311.

Tse twice moved to lift the stay of the district court action pending reexamination – even though the reexamination proceedings remained ongoing or the reexamination certificate issued by the Patent Office contained multiple obvious errors (including in asserted claim 23). A980-1171; A1386-1407; A1619-22; A1624-28. The district court denied both motions. A1377-85; A1629-32. Unsatisfied, Tse sought mandamus from this Court to direct the district court to lift the stay of proceedings, commence discovery, and reassign the case to a different district court judge. A1633-34; A313-16. This Court denied the petition. A313-16.

Tse also moved for leave to amend his infringement contentions, despite the stayed posture of the case. A1541-55. The district court denied this motion, explaining that discovery motions are improper during a stay. A1629-32; *cf.* A1623.

## II.    THE ASSERTED PATENT

### A.    The Technology of the '797 Patent

The '797 patent discloses a method for protecting software against

unauthorized use.  A745 at 2:33-38.  In particular, it teaches an authentication

method involving software that performs authentication via a central program and

without any external decryption hardware.  A745 at 1:14-29.  The central program

includes three subprograms:  (1) a sub-program for providing encrypted identity

information (the "EI sub-program"); (2) a sub-program for authenticating a

computer (the "AC sub-program"); and (3) a sub-program for authorizing access or

use of protected software (the "AS sub-program").  A745 at 2:40-46.

The central program verifies the user's identity information on the computer

by using the EI sub-program.  It then optionally authenticates a computer as being

an authorized computer by using the AC sub-program.  A745-47 at 2:33-5:30.

Depending on the result of these checks, the AS sub-program permits access or use

of the protected software by either sending an encrypted command to the software

to permit it to run or by decrypting the software to allow access.  A745-47 at 2:33-

5:30.

The '797 patent's disclosure teaches that the EI sub-program can be used to

obtain goods and services on a user's account "for payment therefor [sic]

involved."  A745 at 1:46-51.  Because the central program containing the AS sub-

program (required for accessing protected software) also contains the EI sub-program, which can be used to make purchases on the user's account, the user is purportedly deterred from providing unauthorized access to the central program to others.

## B.    The Prosecution History

On December 1, 1995, Tse filed Patent Application No. 08/587,448 (the "'448 application" or "parent application").  After eight years of prosecution and multiple claim rejections, Tse abandoned the '448 application in July 2003.  Before abandoning the application, on July 9, 1998, Tse filed Patent Application No. 09/112,276 (the "'276 application" or "CIP application") as a continuation-in-part ("CIP") to the '448 application.  Although Tse made several immaterial language changes to the specification of the CIP application, the substance of the disclosure was virtually unchanged from the specification of the original parent application.

On April 2, 2001, during the prosecution of the CIP application, Tse amended his claims in response to a prior art rejection.  A725-42.  In particular, Tse added the requirement that access to the protected software be provided without an electronic payment or charge, *i.e.*, the no-charge limitation.  *Id.*  As the *Google* court explained, there was no support in the written description for this

9

limitation.  A825-27.  While the prior art required a billing operation to take place, Tse contended that his method required no such operation.  A726.

On December 16, 2003, the '797 patent issued.  In final form, the asserted claims all contain some variation of the no-charge limitation.  A743; A748-49. Specifically, claims 1-5, 13, 17, 23, and 25-26 each require that "access to said software desired to be protected is being provided without causing a said [electronic payment] operation being performed."  A748-49; A754-55.  Claims 16, 20, and 24 each require that a claimed step of "permitting use" of the software desired to be protected without causing an electronic payment transaction to take place.  A749; A754-55.

During reexamination of the '797 patent, however, the U.S. Patent Office and Board of Patent Appeals and Interferences ruled that the disclosures in the parent and CIP applications failed to provide adequate written description support for the no-charge limitation.  A1779-80; A1794.

<u>**SUMMARY OF THE ARGUMENT**</u>

As the Supreme Court explained in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, a "patentee, having been afforded the opportunity to exhaust his remedy of appeal from a holding of invalidity, has had his 'day in court' and should not be allowed to harass others on the basis of an invalid claim."  402 U.S. 313, 339-40 (1969).

10

The three factors in *Blonder-Tongue* for collateral estoppel apply squarely in this case.  First, the '797 patent was found invalid for lack of written description in the *Google* litigation, and that case proceeded to final judgment.  Tse exploited all procedural opportunities available to him, but was unsuccessful in his appeals to this Court and the Supreme Court.  Second, the issues litigated in this case and the *Google* litigation are identical – the same claims of the same patent are at issue.  Third, Tse had a full and fair opportunity to litigate the validity of the '797 patent, having fully briefed the written description issue before the district court, this Court, and the Supreme Court.

Unable to challenge the clear application of collateral estoppel in this case, Tse argues procedural error, *i.e.*, that the district court abused its discretion by allowing each party only five pages of briefing to address the issue.  But Tse never moved the district court for additional pages to brief the collateral estoppel issue, and he does not show how additional pages might have changed the outcome.  He also wasted the pages that he was given, focusing his arguments on the merits of the *Google* district court's invalidity decision, instead of addressing whether collateral estoppel applies.

Regardless, the Google court's invalidity decision – and this Court's affirmance of that decision – were plainly correct.  Nothing in the specification provides support for the no-charge limitation, which was added during prosecution

of the continuation-in-part application. All claims of the '797 patent therefore are invalid under 35 U.S.C. § 112(a) for lack of written description.

## ARGUMENT

## I.     STANDARD OF REVIEW

The Federal Circuit applies the law of the regional circuit to the application of collateral estoppel.  *See Bayer AG. v. Biovail Corp.*, 279 F.3d 1340, 1345 (Fed. Cir. 2002).  The Ninth Circuit has reviewed the application of collateral estoppel under varying standards, either subject to *de novo* review or for abuse of discretion. *See Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1360 (Fed. Cir. 2006) (comparing Ninth Circuit cases setting forth varying standards of review for application of collateral estoppel).  Under either standard, the result in this case would be the same.

## II.    THE DISTRICT COURT CORRECTLY FOUND THAT THE DOCTRINE OF COLLATERAL ESTOPPEL BARS TSE FROM ASSERTING HIS INVALID PATENT AGAINST DEFENDANTS

The district court correctly held that, as a result of the final judgment of invalidity in the *Google* litigation, collateral estoppel barred Tse's action against Defendants.  *See* A1-4.  The Supreme Court in *Blonder-Tongue* set forth the requirements for when defensive collateral estoppel could be asserted in patent infringement cases:

> (1) the patent was found invalid in a prior case that had proceeded through final judgment and in which all procedural opportunities were available to the patentee;
>
> (2) the issues litigated were identical; and
>
> (3) the party against whom estoppel is applied had a full and fair opportunity to litigate.

*Abbott Labs. v. Andrx Pharm., Inc.*, 473 F.3d 1196, 1203 (Fed. Cir. 2007)

(interpreting requirements of *Blonder-Tongue*).  Here, all three requirements were met.

### A.    The '797 Patent Was Found Invalid in the *Google* Litigation and Proceeded Through Final Judgment, and Tse Was Afforded All Procedural Opportunities

<u>*Found invalid*</u>.  In the *Google* litigation, the district court held that claims 1-5, 13, 16, 17, 20, and 23-26 of the '797 patent – the same claims Tse asserted here – are invalid for inadequate written description.  A821; A830.  The court held that all those claims recited the no-charge limitation (*i.e.*, providing access to protected software without a payment or charge), but that the specification did not support this limitation.  A825-30.

<u>*Proceeded through final judgment*</u>.  "A 'final judgment' for purposes of collateral estoppel can be any prior adjudication of an issue in another action that is determined to be 'sufficiently firm' to be accorded conclusive effect."  *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983) (citation omitted).  Indeed, the Federal Circuit has held that even where the invalidity of a

patent was determined on summary judgment rather than a "full-fledged trial," the patentee is estopped from asserting a patent declared invalid in the prior suit against a different defendant. *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 712 (Fed. Cir. 1983) (holding that the "rationale of *Blonder-Tongue* extends to all prior determinations of invalidity; its application is not dependent on how the judgment of invalidity was reached"). Further, a final judgment retains its collateral estoppel effect even while pending appeal. *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007).

Here, the *Google* court granted summary judgment of invalidity of the asserted claims of the '797 patent, and Tse exhausted all appeals on that judgment. He appealed the invalidity judgment to this Court. A1898-1965. The Court affirmed the invalidity ruling, A521-22, and denied Tse's petition for panel rehearing and petition for rehearing *en banc*, A662.5-662.6. Thereafter, Tse sought review in the Supreme Court. Yet the Supreme Court denied Tse's petition for a writ of certiorari. A662.8. Thus, there can be no dispute that the invalidity judgment was a final judgment for purposes of collateral estoppel.

*All procedural opportunities available*. In addition, Tse was afforded all procedural opportunities to litigate invalidity in the *Google* litigation. Tse filed an opposition brief to the summary judgment motion of invalidity, A1813-24, and was heard at oral argument on the motion, A820. And as discussed above, Tse

14

exercised his right to appeal the district court's invalidity judgment to the Federal Circuit and to seek review from the Supreme Court. Before this Court alone, his briefing spanned 86 pages. Thus, the first requirement of the *Blonder-Tongue* test is met.

### B.    The Issues Litigated in the *Google* Litigation Were Identical to the Issues in the District Court

The second requirement under *Blonder-Tongue* also is satisfied. Tse asserted claims 1-5, 13, 16, 17, 20, and 23-26 of the '797 patent in the *Google* litigation – the same claims Tse asserted in the district court in the instant action. A504; A523-527; A821. Indeed, the district court found that "it is undisputed that the claims of the '797 patent at issue in this action are the same claims that were declared invalid in the Google litigation." A4. Accordingly, the second requirement for defensive collateral estoppel is also met here.

### C.    Tse Had a Full and Fair Opportunity to Litigate

Finally, Tse had a full and fair opportunity to litigate the validity of the asserted claims of the '797 patent. A prior determination of invalidity estops a patentee from asserting the patent against others, unless the patentee can demonstrate that it was denied a full and fair opportunity to litigate the patent's validity in the prior action. *Miss. Chem. Corp. v. Swift Agric. Chems. Corp.*, 717 F.2d 1374, 1379 (Fed. Cir. 1983); *see also Stevenson*, 713 F.2d at 709, 713 ("The proper inquiry for the court is whether the patentee had a full and fair

opportunity to litigate the validity of his patent in the prior unsuccessful suit."). Tse has failed to make such a showing.

Tse's arguments that he was denied a full and fair opportunity to litigate the validity of the '797 patent are, in truth, arguments directed at the merits of the *Google* court's decision. (Opening Br. at 11-20.) That, however, is not the proper inquiry. In considering whether the doctrine of collateral estoppel applies, the Court may not inquire as to whether the prior judgment of invalidity is correct. *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 1380 (Fed. Cir. 1999) ("Under *Blonder-Tongue*, a district court's inquiry into whether the plaintiff was afforded a full and fair opportunity to litigate is quite narrow and does not involve a judgment on the merits" regarding "the prior finding of invalidity.").

Here, the record indicates that Tse had a full and fair opportunity to litigate the validity of the '797 patent in the *Google* litigation. Tse had the opportunity to both brief and argue the validity of the '797 patent. A820-30. Tse also received the benefit of a reasoned and detailed order from the *Google* court granting summary judgment of invalidity, which it issued after considering the briefing of the parties and hearing oral argument. *Id.* Tse also exhausted all available appeals from the adverse judgment, before this Court and the Supreme Court.

For all these reasons, the district court correctly found that Tse had "failed to demonstrate that he was denied a full and fair opportunity to litigate the validity of

the '797 patent in the *Google* litigation" and that Tse "had ample opportunity to

litigate this issue in both the district court and on appeal."  A3-4.  The district court

therefore correctly held that Tse had had his day in court and that collateral

estoppel applies.

## III.    THE DISTRICT COURT DID NOT ERR BY LIMITING THE BRIEFING ON COLLATERAL ESTOPPEL, ESPECIALLY BECAUSE TSE DID NOT SEEK ADDITIONAL PAGES

Tse further suggests that he lacked a full and fair opportunity "to contest

'collateral estoppel' through motion practice," because he was confined to a five-

page brief in the district court.  District courts, however, are given wide discretion

in managing their dockets, and a district court's determination of such matters is

reviewed for abuse of discretion.  *United States v. Oregon*, 745 F.2d 550, 552 (9th

Cir. 1984).  The district court did not abuse its discretion for multiple reasons.

First, Tse never sought additional briefing to address the issue of collateral

estoppel.  Instead, Tse sought only to improperly attack the merits of the *Google*

court's invalidity judgment.  *See Pharmacia & Upjohn*, 170 F.3d at 1380 ("Under

*Blonder-Tongue*, a district court's inquiry into whether the plaintiff was afforded a

full and fair opportunity to litigate is quite narrow and does not involve a judgment

on the merits" regarding "the prior finding of invalidity.").  Specifically, he asked

the Court to:  (1) re-open the case so that the district court could reconsider the

construction of the no-charge limitation and revisit the *Google* court's invalidity

judgment; and (2) re-open the case to allow additional briefing to address "voiding the summary judgment and affirmance" in the Google litigation.  A668-69. Having failed to request additional pages to brief the issue of collateral estoppel, Tse cannot now be heard to complain that he lacked adequate opportunity to brief the issue.  *Cf. Israel Bio-Engineering Project v. Amgen, Inc.*, 475 F.3d 1256, 1265 (Fed. Cir. 2007) (declining to consider arguments that were not presented to district court).

Second, and regardless, Tse has not identified any argument regarding collateral estoppel that he was unable to raise in the district court due to its briefing limits – much less one that would have changed the outcome.  Rather, Tse re-presses the same arguments regarding validity that he previously made to this Court in his appeal from the *Google* judgment.  Accordingly, even assuming that the district court abused its discretion in limiting briefing on whether collateral estoppel applies (which it did not), Tse has suffered no prejudice.

## IV.    THE *GOOGLE* COURT CORRECTLY DECIDED CLAIMS 1-5, 13, 16, 17, 20, AND 23-26 OF THE '797 PATENT ARE INVALID FOR LACK OF WRITTEN DESCRIPTION

Even if the Court were to hold that collateral estoppel should not apply, the district court (and this Court) in the *Google* litigation were unmistakably correct in holding that the asserted claims of the '797 patent are invalid under 35 U.S.C. § 112.

18

sf-3554944

The written description requirement "ensure[s] that the patent applicant was in full possession of the claimed subject matter on the application filing date." *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001). When as here, "the applicant adds a claim or otherwise amends his specification after the original filing date . . . the new claims or other added material must find support in the original specification," which includes the specification of any CIP application. *Id.* at 1118, 1120.

### A.    Claims Containing the No-Charge Limitation Lack Written Description Support in the Parent Application

All claims, as amended during the prosecution of the CIP application, include the no-charge limitation. A725-42; A743; A748-49, A754-55. As recited in the claims, the no-charge limitation requires that access to the protected software be provided *without an electronic payment or charge*. *Id.* Yet the specification of the parent application provides no written description support for this limitation. A670-86.

As the *Google* court correctly found, the parent disclosure is silent as to the role of payment with respect to the AS sub-program, which is the sub-program responsible for authorizing access or use of protected software. A825-26; A670-86. Nothing in the disclosure conveys that access to the protected software though the AS subprogram would not (or would, for that matter) require a payment. *Id.*

Moreover, the parent application discusses payment only in the context of the encrypted identity information program (the "EI sub-program") and only in the context of affirmatively *causing* a payment to be made.  A825-26; A674-75. According to the parent application, "the central program causes the EI program to execute for providing an encrypted identity of the user" and "the central computer may use the encryption result, if it being correct, from the EI program as a user authori[z]ation for payment to be made, from a user account for obtaining network services or software products or the like."  A674-75.  Nothing in the parent disclosure, however, conveys with reasonable clarity to one skilled in the art that the EI program would *not* use the "authorization for payment to be made" to actually make a payment.  A670-86.

In sum, the parent application fails to disclose payment with respect to access or non-access to protected software as part of the AS sub-program, discussing payment only with respect to validating a user's identity as part of the EI sub-program.  A674-75.  Thus, the limitation requiring not charging for access to the protected software using the AS sub-program lacks a written description basis in the parent application.

### B. The Continuation-in-Part Application Also Fails to Provide Sufficient Written Description Support

The CIP specification made only minor non-substantive changes to the specification included with the original parent application.  A811-19 (redline

20

comparing parent specification and CIP specification).  As such, it too fails to provide sufficient support for the no-charge limitation to satisfy the written description requirement.

As in the parent application, there is no mention in the '276 application of charging or not charging with respect to the AS sub-program.  A706-24.  And like the parent application, the CIP application discusses payment only in the context of the EI sub-program for providing encrypted identity information and *causing* a payment to be made.  A707-08; A710.  This disclosure of payment using the EI sub-program does not support the added limitation of not charging for access to the protected software using the AS sub-program.

Thus, given the absence of any disclosure supporting the no-charge limitation, the *Google* court correctly determined that the '797 patent disclosure does not "describe an invention . . . in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention . . . with *all* its claimed limitations."  *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) (emphasis added); A827.

### C.    The Original CIP Claims Do Not Disclose The No-Charge Limitation

The *Google* court correctly concluded that the original CIP claims also fail to provide written description of the no-charge limitation.  The original CIP claims do not disclose "not charging" vis-à-vis access to the protected software.  Rather

the original CIP claims discuss "not charging" only in the context of checking

identity software as part of the EI sub-program.  A719-24.  For example, CIP

original claim 1 recites:

> said identity information being for to be authenticated by
> a remote computing means in order for enabling
> operation(s) for which said rightful or authorised user has
> to be responsible, to be performed . . . and *the existence*
> *of said identity software in a memory means under*
> *control of said computer is being determined without a*
> *said operation being performed by said remote computer.*

A719 (emphasis added).  This "without a said operation" language is tied to

checking the identity software, *i.e.*, the EI sub-program.  It says nothing about not

charging for access to protected software as part of the AS sub-program.  This

payment-free EI sub-program check is irrelevant to whether a charge (*e.g.*, pay-

per-use or metered usage) is or is not required for access to or use of the software

as part of the AS sub-program.

Similarly, CIP original claim 12 recites:

> said identity information being for to be authenticated by
> a remote computing means in order for enabling
> operation(s) for which said rightful or authorised user has
> to be responsible, to be performed . . . and *said identity*
> *software is not being used to provide said identity*
> *information for to be authenticated by said remote*
> *computing means, in permitting use of said software*
> *desired to be protected.*

A723 (emphasis added).  Similarly, the italicized portion in CIP original claim 12

relating to the software's identity check as part of the EI sub-program does not say

anything about not charging by the AS sub-program to access the protected software.

Because neither the parent application nor the CIP application, including the original CIP claims, provides sufficient written description support for the no-charge limitation, the *Google* court correctly held that the asserted claims of the '797 patent are invalid for lack of written description support.  And this Court's summary affirmance of that holding was entirely correct.

## CONCLUSION

The '797 patent has been adjudicated to be invalid.  Tse had ample opportunity to litigate the validity of the '797 patent in the *Google* litigation all the way to the Supreme Court, and the judgment of invalidity is now final.

Having had full and fair opportunity to litigate invalidity previously, Tse is collaterally estopped from re-litigating the issue again here.  Thus, the Court should summarily affirm the district court's dismissal of the action against Defendants, just as it did in the *Google* litigation.

Dated:  August 10, 2015                    Respectfully submitted,


/s/ Michelle Carniaux                       /s/ Michael A. Jacobs
MICHELLE CARNIAUX                           MICHAEL A. JACOBS
JOHN FLOCK                                  RICHARD S.J. HUNG
KENYON & KENYON LLP                         ESTHER KIM
One Broadway                                MORRISON & FOERSTER LLP
New York, NY  10004                         425 Market Street
Telephone:  212.425.7200                    San Francisco, CA  94105
Facsimile:   212.425.5288                   Telephone:415.268-7000
MCarniaux@kenyon.com                        Facsimile: 415.268-7522
JFlock@kenyon.com                           MJacobs@mofo.com
                                            RHung@mofo.com
                                            EKim@mofo.com
Attorneys for Defendant-Appellee
Sony Network Entertainment Int'l LLC
                                            BRIAN R. MATSUI
                                            MORRISON & FOERSTER LLP
                                            2000 Pennsylvania Avenue, NW
/s/ Douglas E. Lumish                       WASHINGTON, DC  20006
DOUGLAS E. LUMISH                           Telephone:  (202) 887-8784
PATRICIA YOUNG                              Facsimile:  (202) 785-7569
LATHAM & WATKINS LLP                        BMatsui@mofo.com
140 Scott Drive
Menlo Park, CA  94025
Telephone:  650.328-4600                    Attorneys for Defendant-Appellee
Facsimile:   650.463-2600                   Apple Inc.
doug.lumish@lw.com
patricia.young@lw.com


Attorneys for Defendant-Appellee
MusicMatch, Inc.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

This BRIEF FOR DEFENDANTS-APPELLEES complies with the type-volume limitation of Rule 32(a) of the Federal Rules of Appellate Procedure because it contains 5,105 words.


Dated:  August 10, 2015          _____ */s/ Michael A. Jacobs* _____
                                 Michael A. Jacobs

## **PROOF OF SERVICE**

I hereby certify that I electronically filed the foregoing BRIEF FOR

DEFENDANTS-APPELLEES with the Clerk of the Court for the United States

Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on

August 10, 2015.  I further certify that all counsel, with the exception of Petitioner

Ho Keung Tse, are registered CM/ECF users and that service will be accomplished

via the CM/ECF system.  As to Tse, service will be accomplished via First Class

mail and electronic mail to:

> Ho Keung Tse
> P.O. Box 80306
> Cheung Sha Wan Post Office
> Hong Kong
> Telephone:  (608) 268-3667
> Tse2012@sina.com

Dated:  August 10, 2015                    _____*/s/ Michael A. Jacobs*_____
                                                              Michael A. Jacobs